UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE USA, INC., | : |
| Plaintiffs, | : Civ. No. 2:20-cv-05784 |
| v. | : |
| JANN P. OBERG, J.P. ATHLETICS, LTD., and CITY SOURCE N.Y. INC. doing business as CITY SOURCE, | : |
| Defendants. | : |

## COMPLAINT OF AND NIKE USA, INC.

Plaintiff Nike USA, Inc. ("Nike") sues Defendants Jann P. Oberg, J.P. Athletics, Ltd., and City Source N.Y. Inc. doing business as City Source (collectively, the "Defendants") for, as set forth below, account stated, breach of contract, breach of personal guaranty, indemnification, and unjust enrichment. In the alternative, Nike sues: (i) Jann P. Oberg for fraud, fraudulent concealment, intentional/fraudulent misrepresentation, fraudulent inducement, and negligent misrepresentation; (ii) all Defendants for breach of covenant of good faith and fair dealing; and (iii) J.P. Athletics, Ltd., and City Source N.Y. Inc. doing business as City Source for unjust enrichment. In support of this Complaint, Nike states as follows:

### I. BACKGROUND FACTS

1. Plaintiff, Nike USA, Inc. is an Oregon corporation whose principal business activity is the design, development, and marketing and selling of athletic footwear, apparel, equipment, accessories, and services. Nike USA, Inc. is organized in, domiciled in, and a citizen of Beaverton, Oregon.

2. Defendant J.P. Athletics, Ltd. ("JP Athletics") was a retailer of athletic footwear, apparel, and equipment.

3. JP Athletics was dissolved in 1994.

4. JP Athletics did business as City Source in the Sunrise Mall in Massapequa, New York.

5. JP Athletics was organized in, domiciled in, and a citizen of Massapequa, New York.

6. According to the New York State Division of Corporations, JP Athletics' registered office is located at 55 Railroad Avenue, Garnerville, New York 10923.

7. Defendant City Source N.Y. Inc. ("City Source") is a retailer of athletic footwear, apparel, and equipment.

8. City Source does business as City Source in the Sunrise Mall in Massapequa, New York.

9. City Source is organized in, domiciled in, and a citizen of Massapequa, New York.

10. According to the New York State Division of Corporations, City Source's registered office is located at 248 Sunrise Mall, Massapequa, New York 11758.

11. Defendant Jann P. Oberg is an individual domiciled in, a citizen of, and residing at 9 Hillside Lane, Syosset, New York 11791.

12. Defendant Jann P. Oberg is the Chief Executive Officer of City Source.

13. Defendant Jann P. Oberg was the owner of JP Athletics.

14. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

**A. The Account Agreements**

15. From 2001 through 2019, Nike sold sporting goods, shoes, and apparel to City Source.

16. Nike and City Source are parties to the Nike Account Application and Agreement dated March 28, 2001 (the "2001 Account Agreement"). A copy of the 2001 Account Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

17. In the 2001 Account Agreement, Jann Oberg states that the applicant, "J.P. Athletics" does business as "City Source."

18. In the 2001 Account Agreement, the applicant signs the 2001 Account Agreement as "JP Athletics dba City Source."

19. JP Athletics was already dissolved at the time Jann Oberg completed and signed the 2001 Account Application.

20. Nike and City Source are parties to the Nike Account Application and Agreement dated May 22, 2003 (the "2003 Account Agreement"). A copy of the 2003 Account Agreement is attached hereto as **Exhibit 2** and is incorporated herein by reference.

21. In the 2003 Account Agreement, Jann Oberg states that the applicant, "J.P. Athletics" does business as "City Source."

22. In the 2003 Account Agreement, the applicant signs the 2003 Account Agreement as "JP Athletics dba City Source."

23. JP Athletics was already dissolved at the time Jann Oberg completed and signed the 2003 Account Application.

24. Nike and City Source are parties to the Nike Account Application and Agreement dated February 17, 2004 (the "2004 Account Agreement," along with the 2001 Account Agreement and the 2003 Account Agreement, collectively, the "Account Agreements"). A copy of the 2004 Account Agreement is attached hereto as **Exhibit 3** and is incorporated herein by reference.

25. In the 2004 Account Agreement, Jann Oberg states that the applicant, "J.P. Athletics" does business as "City Source."

26. In the 2004 Account Agreement, the applicant signs the 2004 Account Agreement as "City Source."

27. JP Athletics was already dissolved at the time Jann Oberg completed and signed the 2004 Account Application.

28. In each Account Agreement, the applicant lists the same tax identification number.

29. Upon information and belief, the tax identification numbers listed in the Account Agreements are the tax identification number for City Source.

30. In the intervening years between 2001 and 2019, Nike and City Source may have entered into additional account agreements with substantially similar terms.

31. The Account Agreements are supported by consideration. In exchange for the execution of the Account Agreements, *inter alia,* Nike agreed to permit the JP Athletics and City Source (collectively, the "Account Defendants") to sell products in authorized retail locations in accordance with the terms and conditions of the Account Agreements.

4

32. The Account Agreements require the Account Defendants to pay for all goods sold when due, pursuant to invoice terms.

33. The Account Agreements require the Account Defendants to dispute an invoice within thirty days after the date the invoice is due. If the Account Defendants do not dispute invoices within thirty days after the date the invoice is due, then, pursuant to the Account Agreements, the invoice will be deemed accepted and conclusively binding upon Account Defendants.

34. The Account Agreements state that if Account Defendants open or acquire additional retail locations other than the retail locations approved by the Account Agreements, Defendant must submit to Nike a new account application for each additional location.

35. The Account Agreements provide that Account Defendants will pay such costs, collection agency fees, expenses, reasonable attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with the collection of any past due sums.

36. The Account Agreements are governed by Oregon law.

**B. The Personal Guaranty**

37. On February 16, 2001, Jann P. Oberg (the "Guarantor") provided Nike USA, Inc., its successors, and assigns with the Nike Personal Guaranty (the "Personal Guaranty"). A copy of the Personal Guaranty is attached hereto as **Exhibit 4** and is incorporated herein by reference.

38. In the Personal Guaranty, the Guarantor personally guaranteed the debts of the Account Defendants to Nike.

39. The Personal Guaranty is absolute and unconditional.

40. Paragraph 1 of the Personal Guaranty provides, *inter alia,* that none of the following on one or any number of occasions, will affect Guarantor's liability: (a) any increase or decrease in

the amount of credit extended to Account Defendants, any extension of time for payment, any acceptance of partial payments, or any other modification in the terms of the credit granted to or the relationship with Account Defendants; (b) any change, amendment, or renegotiation of any term or condition of any agreement between Account Defendants and Nike; . . . (d) any sale, transfer or other conveyance by Account Defendants of its assets to any other entity; and (e) any other thing between Nike and Account Defendants or between Nike and Guarantor, whether or not specified, which may be done or waived.

41. Paragraph 3 of the Personal Guaranty provides that Nike will not be obligated to proceed against the Account Defendants, any other guarantor or against any collateral before proceeding against Guarantor.

42. In the Personal Guaranty, the Guarantor absolutely and unconditionally guaranteed payment to Nike of all indebtedness of Account Defendants.

43. The Personal Guaranty allows Nike to recover, in addition to the sums owed by Account Defendants, principal, interest, additional charges and expenses, and attorneys' fees from the Guarantor.

44. The Personal Guaranty is supported by consideration.

45. In exchange for the Guarantor's execution of the Personal Guaranty, *inter alia,* Nike agreed to do business or to continue to do business with Account Defendants in accordance with the terms and conditions of the Account Agreements.

46. The Personal Guaranty remains in effect until the Guarantor provides written notice by certified mail of the termination of the Personal Guaranty.

47. Termination of the Personal Guaranty does not affect the liability of the Guarantor for any obligations then due or which thereafter become due and payable for merchandise shipped

by Nike to the entity in the Personal Guaranty at the time of the termination of the Personal Guaranty.

48. Paragraph 5 of the Personal Guaranty provides that "Guarantor agrees to indemnify NIKE and hold NIKE harmless from all obligations, demands, claims, and liabilities asserted by any other party, and against all losses incurred or paid by NIKE in any way arising out of or in connection with NIKE's transactions with Buyer." Buyer refers to the Account Defendants.

49. Jann P. Oberg personally guaranteed payment to Nike of the debts of Account Defendants.

50. In the Personal Guaranty, the Guarantor acknowledges that Nike will rely on the Personal Guaranty in doing business with and extending credit to Account Defendants.

51. Nike relied on, *inter alia*, the Personal Guaranty during the course of nearly twenty (20) years in making decisions to extend credit and actually extending credit to Account Defendants.

52. The Guarantor has not terminated the Personal Guaranty.

## II. COUNT I – ACCOUNT STATED

Nike v. Account Defendants

53. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

54. Nike issued invoices to Account Defendants for goods and services Nike provided to Account Defendants, and such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

55. Nike and Account Defendants have worked to resolve invoice discrepancies, including, but not limited to, chargebacks, freight, and quantity issues. After resolving such

issues, the amounts set forth in this Complaint remain due and payable to Nike by Account Defendants.

56. As of the date of the filing of this Complaint, Account Defendants are indebted to Nike in an amount no less than $194,701.18, exclusive of interest, fees and costs. A copy of the Account Statement showing the amount Account Defendants owe to Nike is attached hereto as **Exhibit 5.**

57. The foregoing amount has not been paid to Nike as of the filing of this Complaint, and Account Defendants have not requested approval to return any product to Nike.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Account Defendants in an amount no less than $194,701.18, plus interest, all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with Nike's collection efforts.

### III.　COUNT II – BREACH OF CONTRACT

Nike v. Account Defendants

58. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

59. Account Defendants and Nike are parties to the Account Agreements, which require Account Defendants to pay Nike for goods and services provided to Account Defendants.

60. Nike provided goods and services to Account Defendants, which was Nike's substantial performance pursuant to the Account Agreements.

61. Nike has invoiced Account Defendants for the amounts set forth in Count I of this Complaint.

62. Nike has resolved all discrepancies and issues raised by Account Defendants with respect to each invoice issued to Account Defendants by Nike.

63. Nonetheless, Account Defendants have failed to pay Nike for the goods and services Nike has provided to Account Defendants.

64. Account Defendants' failure to pay Nike is a breach of the Account Agreements.

65. Account Defendants' breach of the Account Agreements has caused Nike to suffer damages in an amount no less than $194,701.18 plus interest, all of Nike's costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal).

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Account Defendants in an amount no less than $194,701.18 plus costs, collection agency fees, expenses, and reasonable attorney fees (whether incurred prior to, at trial, or on appeal) incurred by Nike in connection with Nike's collection efforts.

### IV. COUNT III – BREACH OF PERSONAL GUARANTY

Nike v. Jann P. Oberg

66. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

67. The Guarantor personally guaranteed payment of the debts of Account Defendants to Nike in exchange for Account Defendants' continued ability to conduct business with Nike and Nike's extension of credit to Account Defendants.

68. Nike provided goods and services to Account Defendants and extended credit to Defendants, which was Nike's substantial performance pursuant to the Personal Guaranty signed by the Guarantor.

69. The Guarantor failed pay Nike for the goods and services Nike provided contrary to the Personal Guaranty signed by Guarantor, causing Nike to suffer damages.

70. Because of the Personal Guaranty signed by the Guarantor, the Guarantor is personally obligated to Nike in an amount not less than $194,701.18 plus interest, costs, collection agency fees, expenses, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

WHEREFORE, Nike requests that judgment be entered against the Guarantor in an amount no less than $194,701.18 plus all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

V. COUNT IV – INDEMNIFICATION

Nike v. Jann P. Oberg

71. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

72. The Personal Guaranty requires the Guarantor to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with Account Defendants.

73. The Guarantor is required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with Account Defendants.

74. The Guarantor has not indemnified Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with Account Defendants.

75. Nike has suffered damages not less than $194,701.18 for Guarantor's failure to indemnify Nike.

WHEREFORE, Nike requests that judgment be entered against Guarantor in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## IN THE ALTERNATIVE

### VI.   COUNT V – FRAUD

Nike USA, Inc. v. Jann P. Oberg

76. Nike incorporates herein by reference all of the foregoing paragraphs of this Complaint as if fully restated herein.

77. Jann P. Oberg induced Nike to enter into the Account Agreements and Personal Guaranty with fraudulent applications and documentation regarding the existence of JP Athletics.

78. Jann P. Oberg completed the Account Agreements and Personal Guaranty with false information listing an entity, JP Athletics, that was not in existence at the time the Account Agreements and Personal Guaranty were signed.

79. Jann P. Oberg completed the Account Agreements and Personal Guaranty with the knowledge that JP Athletics was dissolved and not a valid legal entity at the time that Account Agreements and Personal Guaranty were executed.

80. Jann P. Oberg completed the Account Agreements and Personal Guaranty using an invalid and dissolved entity in order to induce Nike to extend credit to an entity that Nike could not pursue for payment.

81. Jann P. Oberg completed the Account Agreements and Personal Guaranty using an invalid and dissolved entity in order to induce Nike to extend credit to an invalid entity to prevent Nike from having any remedies for the collection of debt owed to Nike by the Account Defendants.

82. Jann P. Oberg completed to foregoing fraudulent conduct and made the foregoing fraudulent statements and representations to induce Nike to extend credit and provide goods and services to the Account Defendants.

83. Nike relied on the foregoing fraudulent conduct and statements, extended credit to the Account Defendants, and provided goods and services to the Account Defendants to Nike's detriment.

84. Nike had the right to rely on Jann P. Oberg's fraudulent statements and representations because they were made in contract and under oath in the Personal Guaranty.

85. In 1997, entity information was not readily available online.

86. All of the Defendants owed Nike a covenant of good faith and fair dealing when entering into the Account Agreements and Personal Guaranty.

87. Had Nike known that Jann P. Oberg's representations were fraudulent, Nike would not have extended credit or provided any goods to the Account Defendants.

88. Jann P. Oberg committed fraud protect herself and the Account Defendants from any suit by Nike to collect the debt owed to Nike.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## VII. COUNT VI – FRAUDULENT CONCEALMENT

Nike USA, Inc. v. Jann P. Oberg

89. Nike incorporates herein by reference all of the foregoing paragraphs of this Complaint as if fully restated herein.

90. Jann P. Oberg failed to disclose to Nike the material fact that JP Athletics was a dissolved entity at the time that the Account Agreements and Personal Guaranty were executed.

91. Jann P. Oberg has a duty of good faith and fair dealing to disclose the material fact that JP Athletics was a dissolved entity at the time that the Account Agreements and Personal Guaranty were executed.

92. Jann P. Oberg intended to defraud and deceive Nike by failing to make the afore-mentioned disclosures because Jann P. Oberg wanted to impair Nike's rights and remedies should the Account Defendants fail to pay Nike for goods and services provided by Nike.

93. Nike relied on the foregoing fraudulent concealment, extended credit to the Account Defendants and provided goods and services to the Account Defendants to Nike's detriment.

94. Nike was justified in not discovering facts or information fraudulently concealed Jann P. Oberg because she made fraudulent representations in contract and under oath in connection with the Personal Guaranty.

95. Had Nike known that Jann P. Oberg was fraudulently concealing material information from Nike, Nike would not have extended credit or provided goods and services to the Account Defendants.

96. Nike suffered damages directly resulting from Jann P. Oberg's fraudulent concealment, including, but not limited to, the inability to collect amounts owed to Nike from the Account Defendants and Jann P. Oberg.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## VIII. COUNT VII – INTENTIONAL/FRAUDULENT MISREPRESENTATION

Nike USA, Inc. v. Jann P. Oberg

97. Nike incorporates herein by reference all of the foregoing paragraphs of this Complaint as if fully restated herein.

98. Jann P. Oberg intentionally made statements to Nike in the Account Application and Personal Guaranty that were false regarding the Account Defendants' legal standing.

99. Jann P. Oberg made the false statements knowing that they were false or with a reckless indifference to the truth.

100. The false statements were made for the purpose of defrauding Nike because Jann P. Oberg wanted to prevent Nike from collecting any sums owed from her and the Account Defendants.

101. Nike relied on Jann P. Oberg's false representations and had the right to rely upon Jann P. Oberg's false representations with full belief of their truth because the false representations were made in contract or under oath in connection with the Personal Guaranty.

102. Nike would not have extended credit or provided goods and services to the Account Defendants had Nike known that JP Athletics was not a valid entity.

103. Nike suffered damages directly resulting from Jann P. Oberg's intentionally false and fraudulent representations, including, but not limited to, an inability to seek payment from the Account Defendants and Jann P. Oberg.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### IX. COUNT VIII – FRAUDULENT INDUCEMENT

Nike USA, Inc. v. Jann P. Oberg

104. Nike incorporates herein by reference all of the foregoing paragraphs of this Complaint as if fully restated herein.

105. Jann P. Oberg intentionally made statements to Nike in the Account Application and Personal Guaranty that were false regarding JP Athletics' legal standing.

106. Jann P. Oberg made the false statements knowing that they were false or with a reckless indifference to the truth.

107. The false statements were made for the purpose of defrauding Nike because Jann P. Oberg wanted to prevent Nike from collecting any sums owed from the Account Defendants and from Jann P. Oberg.

108. Nike relied on Jann P. Oberg's false representations and had the right to rely upon Jann P. Oberg's false representations with full belief of their truth because the false representations were made under in contract or under oath in connection with the Personal Guaranty.

109. Nike would not have extended credit or provided goods and services to the Account Defendants had Nike known that JP Athletics was not a valid entity.

110. Nike suffered damages directly resulting from Jann P. Oberg's intentionally false and fraudulent representations, including, but not limited to, an inability to seek payment from the Account Defendants and Jann P. Oberg.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### X. COUNT IX – NEGLIGENT MISREPRESENTATION

Nike USA, Inc. v. Jann P. Oberg

111. Nike incorporates herein by reference all of the foregoing paragraphs of this Complaint as if fully restated herein.

112. Jann P. Oberg negligently completed the Personal Guaranty and Account Applications and represented to Nike that the Account Defendants were valid legal entities.

113. In making the foregoing false statements to Nike, Jann P. Oberg intended that Nike act upon her false statements and extend credit and provide goods and services to the Account Defendants.

114. In making the foregoing false statements to Nike, Jann P. Oberg knew that Nike would rely on the false statements, which would cause loss and injury to Nike.

115. Nike justifiably relied upon and took action in reliance on Jann P. Oberg's false statements because the false statements were made in contract and under oath in connection with the Personal Guaranty.

116. Jann P. Oberg owed a duty to Nike to refrain from negligently asserting false statements in the Personal Guaranty and Account Applications.

117. Nike suffered damages proximately caused from Jann P. Oberg's negligent misrepresentations, including, but not limited to, an inability to collect damages or obtain a judgment against the Account Defendants or Jann P. Oberg.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## XI. COUNT X – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Nike USA, Inc. v. All Defendants

118. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

119. Jann P. Oberg's afore-described conduct on behalf of herself and the Account Defendants has breached the covenant of good faith and fair dealing and has injured Nike.

WHEREFORE, Nike requests that judgment be entered against Jann P. Oberg and City Source N.Y. Inc. doing business as City Source in an amount no less than $194,701.18, plus interest, all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### XII. COUNT XI - UNJUST ENRICHMENT

Nike v. Account Defendants

120. Nike incorporates herein by reference each of the foregoing paragraphs above as if fully restated herein.

121. At the request of Account Defendants, Nike conferred a benefit upon Account Defendants by providing the goods and services described herein and in the exhibits attached hereto.

122. Account Defendants received and accepted the benefit of said goods and services provided by Nike.

123. At all times material hereto, Account Defendants were aware that Nike was providing the aforesaid goods and services to Account Defendants and that Nike expected to be paid for such.

124. At all times material hereto, Account Defendants, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

125. At all times material hereto, Account Defendants were unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

126. Allowing Account Defendants to retain the benefit of said goods and services without paying fair compensation would be unjust.

127. By reason of the aforesaid unjust enrichment of Account Defendants at Nike's expense, an implied contract exists between Nike and Account Defendants, and Account Defendants are obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto.

WHEREFORE, Nike requests that judgment be entered against Account Defendants in an amount no less than $194,701.18, plus interest, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: November 30, 2020

RYAN & CONLON LLP

*/s/ Elizabeth E. Malang*
Elizabeth E. Malang, Esq.
2 Wall Street, Suite 710
New York, NY 10005
Phone: (212) 509-6009
Fax: (212) 509-6119
emalang@ryanconlon.com

-and-

Anthony M. Saccullo, Esq.
Mary E. Augustine, Esq.
Thomas Kovach, Esq.
A.M. Saccullo Legal, LLC

27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
ams@saccullolegal.com

*Attorneys for Nike USA, Inc.*